E-FILED
Friday, 06 May, 2016 10:29:52 AM
Clerk, U.S. District Court, ILCD



FILED
MAY 0 6 2016
CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

United States of America
v.

Robin Collier, Nathan Walker, and Shadow Jennings
*Defendant(s)*

Case No. 16-MJ- 6032

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of late summer 2015 to present in the county of Tazewell in the Central District of Illinois, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21 United States Code, Section(s) 846, 841(a)(1) and 841(b)(1)(B) | did knowingly conspire to manufacture and distribute more than 50 grams of methamphetamine, a Schedule II controlled substance. |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

s/Justin Fitzgerald
*Complainant's signature*

Det. Justin Fitzgerald, Pekin Police Department
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/6/16

s/ Michael M. Mihm
*Judge's signature*

City and state: Peoria, Illinois

Michael M. Mihm, United States District Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF COMPLAINT

Your affiant, Justin Fitzgerald, is a Police Officer employed by the City of Pekin. Your affiant has been so employed since July 26, 2006. Your affiant is currently assigned to the Detective Division. Your affiant is also a Task Force Officer with the Tazewell County Methamphetamine Task Force. Your affiant has been assigned as a Task Force Officer since July of 2011. During the course of your affiant's law enforcement experience, your affiant has received extensive training for investigations of narcotics and weapons violations. In addition, your affiant has also participated in numerous arrests and seizures.

1. This affidavit is made in support of a complaint and an application for an arrest warrant for ROBIN G. COLLIER, NATHAN C. WALKER, and SHADOW G. JENNINGS. The unlawful activity is conspiracy to manufacture and distribute more than 50 grams of methamphetamine.

2. Your affiant is familiar with the following facts based upon your affiant's personal knowledge, personal observations and upon information officially supplied to your affiant by other law enforcement agents or the people described in this affidavit. Since this affidavit is being submitted for the limited purpose of establishing probable cause as set forth herein, I have not included each and every fact known to me concerning this investigation.

3. On 01/23/16 Witness #8 was interviewed by police. Witness #8 told police that they had observed COLLIER and Witness #5 manufacture methamphetamine at the residence of Witness #7. Witness #5 has a prior criminal conviction for aggravated battery and is cooperating in expectation of a reduced sentence on pending charges. Witness #7 has prior criminal convictions for possession of controlled substance, theft, possession of cannabis, DUI, and is cooperating in expectation of a reduced sentence on pending charges. Witness #7 has proven reliable as an informant in past criminal investigations. Witness #8 has prior criminal convictions for retail theft, and voluntarily cooperated by notifying police of the aforementioned information.

4. On 01/27/16 detectives interviewed Witness #7. Witness #7 told police they had witnessed COLLIER and Witness #5 manufacture methamphetamine multiple times over the past several weeks. Witness #7 advised they would procure pseudoephedrine and supply it to COLLIER.

5. On 02/01/16 detective interviewed Witness #9. Witness #9 told detectives they had been supplying pseudoephedrine to and purchasing methamphetamine from WALKER for approximately 5 months. Witness #9 advised JENNINGS would always be present with WALKER and provide WALKER with transportation to make the narcotics transactions. Witness #9 advised JENNINGS would provide him with transportation to area pharmacies to buy pseudoephedrine. Video surveillance was obtained showing JENNINGS transporting people to pharmacies in order to procure pseudoephedrine on multiple occasions to include Witness #9. Witness #9 has prior criminal convictions for retail theft, battery, and is voluntarily cooperating in an effort to not be federally indicted.

6. On 02/02/16 police were called to the residence of JENNINGS and WALKER located at 308 Fulton St. Farmington, IL on the report of meth manufacturing materials being located in the house. Officers arrived and observed materials used to manufacture methamphetamine including Instant Compress Cold Packs, lye drain cleaner, pseudoephedrine receipts, coffee filters, glass bowls with residue, and measuring cup with residue. WALKER and JENNINGS were later taken into custody pursuant to arrest warrants that had issued from the incident. WALKER was interviewed after his arrest and claimed ownership of the Cold Packs but denied any of the items were used to manufacture methamphetamine.

7. On 02/09/16 JENNINGS was interviewed while in custody in Fulton County, IL. JENNINGS told police during the interview she had been present and witnessed ROBIN COLLIER manufacture methamphetamine on 7-10 occasions in recent weeks. JENNINGS advised she procured pseudoephedrine and supplied the pills to COLLIER. JENNINGS advised she would provide transportation to at least 10 different people to area pharmacies for the purpose of acquiring pseudoephedrine. JENNINGS declined to answer any questions regarding her boyfriend NATHAN WALKER.

8. On 02/12/16 Witness #10 was interviewed by detectives. Witness #10 advised they had been solicited by WALKER and JENNINGS to procure pseudoephedrine. Witness #10 advised they procured the pseudoephedrine and supplied the pills to WALKER and JENNINGS. Witness #10 has prior criminal convictions for retail theft, DUI, possession of controlled substance, theft, resisting a peace officer, forgery, and is voluntarily cooperating in efforts to not be federally indicted.

9. On 02/23/15 a search warrant was executed at the residence of Witness #2. Witness #2 and Witness #5 were present and taken into custody. Methamphetamine manufacturing waste was recovered from the residence. Witness #2 was interviewed and told police they had allowed Witness #5 and COLLIER manufacture methamphetamine at their residence multiple times in the recent past. Witness #2 advised they procured pseudoephedrine and supplied them to Witness#5 in exchange for cash. Witness #2 advised a male they knew by the nickname "Bullet" was present for the manufactures with COLLIER and Witness #5. Multiple people through the investigation know NATHAN WALKER to use the nickname Bullet. Witness #5 was interviewed and told police he had assisted COLLIER and WALKER manufacture meth on multiple occasions at multiple locations in the past to include the residence of Witness #2. Witness #5 advised they would solicit other people to procure pseudoephedrine and supply the pills to COLLIER and WALKER. Witness #2 has prior criminal convictions for possession of controlled substance, battery, theft, possession of cannabis, DUI, and is cooperating in expectation of a reduced sentence.

10. On 02/24/16 a search warrant was executed at the residence of Witness #3. Methamphetamine manufacturing materials and meth manufacturing waste was recovered during the execution of the warrant. Witness #3 was interviewed and told police they allowed COLLIER to manufacture methamphetamine in the residence in exchange for cash. Witness #3 additionally told police they were procuring pseudoephedrine that they supplied to COLLIER in exchange for heroin. Witness #3 has prior criminal convictions for possession of cannabis, DUI, and is cooperating in expectation of a reduced sentence.

11. On 02/24/16 Witness #11 and Witness #12 were interviewed by police. Witness #11 and Witness #12 both advised that they used methamphetamine and supplied multiple packages of pseudoephedrine to WALKER in exchange for methamphetamine. Witness #11 has no prior criminal convictions and is cooperating in an effort to not be federally indicted. Witness #12 has prior criminal convictions for possession of cannabis and is cooperating in expectation of a reduced sentence.

12. On 02/25/16 a search warrant was executed at a residence where WALKER was believed to be staying. WALKER was located and taken into custody during the execution of the warrant. Multiple boxes of pseudoephedrine and a methamphetamine pipe were recovered during the warrant. Police also recovered a

copy of the search warrant that had been executed on 02/24/16 at the residence of Witness #3.

13. On 02/29/16 Witness #6 was interviewed by detectives. Witness #6 advised they were solicited by COLLIER to procure pseudoephedrine. Witness #6 advised they procured the pseudoephedrine and supplied it to COLLIER. Witness #6 advised they were present at the residence of Witness #7 on one occasions and observed COLLIER manufacture methamphetamine inside the residence. Witness #6 has prior criminal convictions for theft and voluntarily cooperated in an effort to not be federally indicted.

14. On 03/02/16 Witness #1 was interviewed by detectives with the Methamphetamine Task Force. Witness #1 told detectives that since January 2016 Witness #1 had purchased and supplied pseudoephedrine to WALKER in exchange for cash. Witness #1 advised WALKER gave him methamphetamine that Witness #1 used. Witness #1 advised JENNINGS was present during these transactions and would transport Witness #1 and others to area pharmacies in order to purchase pseudoephedrine. Witness #1 advised they were present and witnessed WALKER and COLLIER manufacture methamphetamine on multiple occasions at COLLIER'S residence located at 472 Hillcrest Terrace Creve Coeur, IL. Witness #1 advised JENNINGS was also present during the manufactures and assisted in the manufacture process. Witness #1 described other locations they had witnessed or assisted WALKER with methamphetamine manufactures. Witness #1 has prior criminal convictions for burglary, residential burglary, and is voluntarily cooperating in an effort to not be federally indicted.

15. On 03/02/16 a search warrant was executed at ROBIN COLLIER's residence located at 472 Hillcrest Terrance Creve Coeur, IL. COLLIER was taken into custody. A large amount of methamphetamine manufacture waste material was recovered from the back yard of the residence. The evidence of manufactures that was recovered indicated that it was waste material from multiple methamphetamine manufactures. COLLIER was interviewed after his arrest on 03/02/16. COLLIER told detectives had had manufactured methamphetamine with WALKER on multiple occasions at multiple locations to include COLLIER'S residence, 472 Hillcrest Terrance Creve Coeur, Witness #2's residence, and Witness #3's residence. COLLIER advised he has been using methamphetamine for the past 2 months that he would obtain from WALKER. COLLIER advised he would solicit others to procure pseudoephedrine as well as procure pseudoephedrine himself that he would supply to WALKER.

COLLIER advised WALKER would use the pseudoephedrine to manufacture methamphetamine.

16. On 03/02/16 Witness #4 was interviewed by detectives. Witness #4 advised they were solicited by Witness #5 to procure pseudoephedrine at area pharmacies. Witness #4 advised they bought pseudoephedrine and supplied it to Witness #5. Witness #4 has prior criminal convictions for resisting a peace officer, possession of controlled substance, obstructing justice, and is voluntarily cooperating in an effort to not be federally indicted.

17. On 04/26/16 Witness #13 was interviewed by detectives after being arrested on the charge of possession of methamphetamine precursors. Witness #13 told detectives they had supplied pseudoephedrine to WALKER multiple times and knew WALKER to manufacture methamphetamine with the pills. Witness #13 advised JENNINGS would provide them with transportation to Peoria area pharmacies along with WALKER each time Witness #13 procured pseudoephedrine. Witness #13 advised they had witnessed WALKER deliver methamphetamine to other people on multiple occasions. Witness #13 has prior criminal convictions for domestic battery, possession of controlled substance, criminal damage to property, and is cooperating in expectation of a reduced sentence.

18. The amount of pseudoephedrine acquired by the group consisting of ROBIN COLLIER, NATHAN WALKER, and SHADOW JENNINGS is at least 143 grams of pseudoephedrine. An overly conservative estimate using a 50% ratio of pseudoephedrine to methamphetamine indicates the group produced and distributed at least 71 grams of methamphetamine.

Based upon the information contained herein, your affiant believes based on his training and experience, and the training and experience of other law enforcement officers that amounts of narcotics possessed and manufactured by ROBIN COLLIER, NATHAN WALKER, and SHADOW JENNINGS are amounts consistent with quantities possessed by individuals intended for distribution. Based upon the information contained herein, your affiant believes based on his training and experience, and the training and experience of other law enforcement officers that the possession and manufacture of methamphetamine by ROBIN COLLIER, NATHAN WALKER, and SHADOW JENNINGS is consistent with narcotics distribution. Based on the information contained within this affidavit, your affiant requests the issuance of an arrest warrant for ROBIN COLLIER, NATHAN WALKER, and SHADOW JENNINGS for

conspiracy to manufacture and distribute more than 50 grams of methamphetamine.

s/Justin Fitzgerald

Detective Justin Fitzgerald
Pekin Police Department

Sworn to and subscribed to
before me this date
6th day of May, 2016:

s/ Michael M. Mihm

Michael M. Mihm
United States District Judge
Peoria, Illinois